UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
RICARDO JIMENEZ,                                            :
                                    Petitioner,             :
                                                            :      11-CV-6468 (JPO)
            -against-                                       :
                                                            :      MEMORANDUM AND
HAROLD GRAHAM,                                              :          ORDER
                                    Respondent.             :
                                                            :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 14 DEC 2011

J. PAUL OETKEN, District Judge:

Petitioner Ricardo Jimenez ("Jimenez" or "Petitioner") seeks to amend a September 9, 2011 petition for a writ of habeas corpus that he brought pursuant to 28 U.S.C. § 2254. Alternatively, he seeks a stay of federal habeas proceedings so that he may exhaust certain claims in state court. Respondent Harold Graham, through the Office of the District Attorney, Bronx County, "takes no position regarding petitioner's motion to stay the petition" but argues that "Petitioner's motion to amend . . . is premature." (Dkt. 11 at 2.)

For the reasons set forth below, the amendment is allowed, and the proposed amended petition is accepted as the current operative pleading. However, while it appears that Petitioner intends his amended petition to raise new claims currently pending in state court, the amended petition does not contain any grounds that are substantially different from those in his original complaint. Accordingly, the proceedings in this Court are hereby stayed pending the conclusion of the state-court proceedings, after which Petitioner may amend his federal habeas petition to properly raise any timely claims exhausted by the state-court proceedings.

I.      **Timeliness**

A federal court may issue a writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254, if "the state-court adjudication resulted in a decision that (1) 'was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000) (quoting 28 U.S.C. § 2254) (O'Connor, J., concurring, writing for the majority in this part) (omissions in original).

However, 28 U.S.C. § 2254 provides that "a[ny] person in custody pursuant to the judgment of a State court" must first exhaust all available remedies in state court before pursuing federal habeas review. 28 U.S.C. § 2254(b)(1)(A). Moreover, habeas petitions brought under 28 U.S.C. § 2254 must generally be filed not later than one year after the completion of state-court direct review. 28 U.S.C. § 2244(d)(1)(A). Direct review is typically complete upon the expiration of the 90-day period in which any petition for writ of certiorari to the U.S. Supreme Court may be filed. *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001). The deadline for filing a petition for federal habeas relief may be tolled, however, by certain proceedings in state court. *Fernandez v. Artuz*, 402 F.3d 111, 112-15 (2d Cir. 2005).

After his judgment of conviction for murder in the second degree was affirmed by the Appellate Division of the New York Supreme Court, *People v. Jimenez*, 71 A.D.3d 483 (1st Dep't 2010), Jimenez was denied leave to appeal by the New York Court of Appeals on June 30, 2010. *People v. Jiminez*, 15 N.Y.3d 752 (2010). Therefore, Jimenez's judgment of conviction became final within the meaning of AEDPA on September 28, 2010, leaving him one year thereafter to file any federal habeas petition.

2

However, Jimenez's time to file a federal habeas petition appears to be tolled by pending state-court proceedings. Jimenez's proposed amended petition (Dkt. 8 at 4, 13) states that a motion to vacate the judgment against Jimenez (the "Motion") was filed pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 on September 23, 2011, in Bronx County Supreme Court and remains pending there. Under New York state law, a § 440.10 motion to vacate a judgment may be filed "[a]t any time after the entry of a judgment, [in] the court in which it was entered," generally on off-the-record grounds that could not have been raised on direct appeal. N.Y. C.P.L. §440.10. Assuming Petitioner has properly filed this § 440.10 Motion, the habeas corpus statute of limitations is tolled beginning from the date petitioner gave the motion to prison officials for mailing, pending the outcome of the state-court proceedings. *Fernandez v. Artuz*, 402 F.3d 111, 112-15 (2d Cir. 2005). In any case, his original petition of September 9, 2011, was timely.

## II.     Jimenez's Original Petition and Proposed Amendment

In his original petition, Jimenez enumerated four grounds of error: (1) that his conviction was against the weight of the evidence; (2) that the trial court erred in refusing to instruct the jury on a justification that the actual perpetrator was provoked; (3) that the prosecutor at trial engaged in misconduct by misrepresenting the record and urging the jury to draw unsupported inferences; and (4) that the seventeen-year period between the crime and Jimenez's indictment violates due process. (Dkt. 2 at 6-12.) All four of these claims have already been exhausted on direct appeal. *See Jimenez*, 71 A.D.3d at 483-84 (rejecting Jimenez's claims on appeal).

In a letter[1] dated October 24, 2011, Jimenez writes that he wishes to amend his petition "as a result of petitioner[']s inadvertently filing his current petition minus the claims filed in his pending collateral motion before the Bronx Supreme Court." (Dkt. 10 at 1 (emphasis in original)). Petitioner alternatively seeks a "'stay' of the proceedings [so that he might] exhaust unexhausted state court claims . . . ." *Id.*

Motions to amend habeas petitions are governed by Federal Rule of Civil Procedure 15(a). *Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001). Rule 15(a) provides that "[a] party may amend its pleading once as a matter of course within: . . . (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Here, the Court issued an order on October 5, 2011, directing the government to respond to Jimenez's petition. The government has not yet done so. As such, Jimenez may amend his petition as a matter of course. The Court therefore accepts Jimenez's amended petition (Dkt. 8) as the current operative pleading.

### A.   Jimenez's Intention to Add New Grounds to his Petition

Jimenez's amended petition does not add any new grounds for requesting a writ of habeas corpus. In the amended petition, Jimenez lists four grounds that are substantially identical to the four grounds presented in his original petition. *Id.* at 6-12. The key difference between the two petitions is that the amended petition describes Jimenez's § 440.10 Motion as "arguing the 'People failed to disclose Brady and Rosario material, Trial counsel was ineffective, and petitioner is actually innocent of the crimes charged.'" *Compare* Dkt. 1 *with* Dkt. 8 at 13. While Jimenez's letter of October 24, 2011, is not entirely clear as to his intentions, it appears to

---

[1] Jimenez's letter is addressed to the Clerk of Court; in the future, Petitioner should send documents to the Pro Se Office. While the Court does not have a record of receiving Petitioner's letter directly, the Court received an emailed copy from Respondent's counsel on November 22, 2011.

4

indicate that Jimenez intends to include in his amended petition the claims raised in his § 440.10 Motion. (Dkt. 10 at 1.)

The new claims that Jimenez appears intent on raising are not exhausted, and thus, the Court could not grant relief on them even if they were raised in Jimenez's amended petition. 28 U.S.C. § 2254(b)(1)(A). However, "[d]istrict courts . . . have authority to issue stays where such a stay would be a proper exercise of discretion." *Rhines v. Weber*, 544 U.S. 269, 276 (2005) (citation omitted). Under *Rhines*, a court may properly exercise this discretion by staying a petition when a petitioner seeks to raise unexhausted claims,[2] assuming that there is good cause for the petitioner's failure to exhaust those claims in state court and that the unexhausted claims are not "plainly meritless." *Id.* at 277.

Such a stay should not be of indefinite duration, however, and "district courts should place reasonable time limits on a petitioner's trip to state court and back." *Rhines*, 544 U.S. at 277-78; *see also Zarvela*, 254 F.3d at 381 (stating that if a district court stays a habeas petition for exhaustion of claims in state court, the court "should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval . . . and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed").

### B. Propriety of a Stay in these Proceedings

Here, Jimenez apparently intends to raise unexhausted claims, currently pending in state court, that the prosecution "failed to disclose Brady and Rosario material, Trial counsel was

---

[2] *Rhines* deals specifically with a "mixed" petition, *i.e.*, a "petition containing some claims that have been exhausted in the state courts and some that have not." 544 U.S. at 271. However, the logic of *Rhines* applies to cases where, as here, a petitioner seeks to add unexhausted claims to an otherwise fully exhausted petition. As explained in *Rhines*, a district court's authority to issue stays is circumscribed by AEDPA only insofar as a stay would contravene AEDPA's purposes of "reduc[ing] delays in the execution of state and federal criminal sentences, particularly in capital cases," "reduc[ing] the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review," and "encourag[ing] petitioners to seek relief from state courts in the first instance." *Id.* at 276. Here, the petitioner remains in state custody and does not face the death penalty. Moreover, Petitioner is pursuing his unexhausted claims in state court. Thus, a stay in this case would not contravene the purposes of AEDPA as delineated by *Rhines*.

ineffective, and petitioner is actually innocent of the crimes charged." (Dkt. 8 at 13.) Though Jimenez has not yet properly raised these claims for federal habeas review, the Court must review them now to the extent necessary to evaluate the propriety of issuing a stay of these proceedings. A stay is proper so long as Jimenez had good cause for not having exhausted at least one new claim, which is not plainly meritless. *Rhines*, 544 U.S. at 277. As explained below, the Court concludes that Jimenez had good cause for not exhausting his *Brady* claim and that that *Brady* claim is not plainly meritless. A stay of these proceedings is therefore appropriate. Having so concluded, the Court does not reach or evaluate any of Jimenez's other new claims.

### 1. Jimenez Has Good Cause for Failure to Exhaust his *Brady* Claim

It appears that Jimenez has good cause for not having exhausted his *Brady* claim because, his submissions state, these claims are based on evidence newly uncovered by the New York Office of Appellate Defender's Reinvestigation Project. (Petitioner's Affirmation in Support of Motion to Vacate Judgment ("Affirmation")[3] at ¶¶ 61-62.) Jimenez could not have earlier exhausted a claim based on evidence of which he was unaware. This fact satisfies the good cause requirement for a stay under *Rhines*.

### 2. Jimenez's *Brady* Claim Is not Plainly Meritless

Nor is Jimenez's *Brady* claim plainly meritless. *Brady v. Maryland*, 373 U.S. 83 (1963), established that prosecutorial suppression of evidence favorable to a defendant violates due process if the evidence is material to guilt or punishment, regardless of the prosecution's good or bad faith. *Id.* at 87. For suppression to constitute a *Brady* violation, three requirements must be met: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully

---

[3] This Affirmation is included as Exhibit A to Jimenez's letter of October 24, 2011. (Dkt. 10.)

or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Prejudice occurs "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

The Supreme Court has also clarified that the duty to disclose such evidence applies even without a request by the accused. *United States v. Agurs*, 427 U.S. 97, 107 (1976). Moreover, Brady does not require that the prosecutor personally know of the evidence not provided to the accused; prosecutors have a duty to "learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 432, 437 (1995). While the government generally need not turn over evidence of which the defense knew or should have known, *United States v. Torres*, 719 F.2d 549 (2d Cir. 1983), suppression of a prosecution witness's criminal history and further evidence of untruthfulness may qualify as a *Brady* violation. *See Crivens v. Roth*, 172 F.3d 991, 998 (7th Cir. 1999); *United States v. Perdomo*, 929 F.2d 967, 973 (3d Cir. 1991).

Jimenez has apparently asserted in pending state-court proceedings that certain omissions in materials provided by the prosecution before trial constitute *Brady* violations. Specifically, Jimenez asserts that, despite a request from Jimenez's trial counsel for information concerning prosecution witnesses' prior convictions and other bad acts, the prosecution suppressed evidence with impeachment value concerning two of the three witnesses who identified Jimenez at trial as the killer. (Affirmation at ¶¶ 61-76; Affirmation of Patrick L. Bruno ("Bruno Affirmation")[4] at ¶ 2.)

---

[4] This Affirmation of Patrick L. Bruno is included as Exhibit A within Exhibit B to Jimenez's letter of October 24, 2011. (Dkt. 10.)

7

As to one of these witnesses, Kevin Morrissey, the prosecution failed to inform Jimenez's counsel of three federal convictions for fraud, conspiracy, and counterfeiting as well as "numerous violations of supervised release." (Affirmation at ¶ 64.) Further, while the prosecution did disclose that several cases were then pending against Morrissey in New York state courts, the prosecution did not disclose to the defense that Morrissey's court records indicated that he suffers from "Schizophrenia, Undifferentiated Type." *Id.* at ¶¶ 63, 65. Finally, the prosecution failed to disclose to the defense certain benefits that Morrissey hoped to gain in exchange for his testimony against Jimenez. *Id.* at ¶ 66.

Concerning the second witness, Andrew O'Brien, Jimenez has apparently asserted in state court that the prosecution failed to alert the defense to O'Brien's prominence in "the 'Poison Clan,' a violent criminal syndicate responsible for drug trafficking and murders from Brooklyn to Virginia." *Id.* at ¶ 68. While the prosecution did disclose O'Brien's conviction for criminal possession of a weapon, the prosecution did not disclose that O'Brien had violated his probation after that offense by shooting two people or that O'Brien was later convicted a second time for criminal possession of a weapon. *Id.* at ¶ 69. Nor did the prosecution notify Jimenez of other bad acts allegedly committed by O'Brien: marijuana sales, his own use of narcotics, and involvement in various plans for killings related to the drug trade. *Id.* at ¶ 69, 71. Jimenez asserts that the above information relating to Morrissey and O'Brien "was known, if not to the individual Assistant District Attorney, to the members of law enforcement involved in the investigation of Mr. Jimenez's case. *See Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995)." (Affirmation at ¶ 75.)

The evidence that Jimenez claims was suppressed by the prosecution may meet the three requirements of a *Brady* violation. Upon full briefing, the Court may find that the evidence is

8

favorable to Jimenez as impeaching of two important witnesses against him and that the prosecution's omissions constitute suppression as discussed in *Kyles v. Whitley*, 514 U.S. 419. Jimenez will have the greatest challenge showing that prejudice resulted from such suppression or, in other words, showing "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). The weight of the putatively suppressed evidence here is somewhat diminished because some of it is similar to other information that the prosecution did disclose. However, Jimenez may put forward a *Brady* claim, not plainly meritless, that the evidence withheld here was favorable to Jimenez, suppressed by the state, and resulted in prejudice.

Because Jimenez has good cause for having failed to exhaust his *Brady* claim in state court and because that claim is not plainly meritless, a stay of these proceedings is appropriate under *Rhines v. Weber*, 544 U.S. 269.

### III. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Jimenez's proposed amended petition is accepted for filing as an amended petition.

IT IS FURTHER ORDERED that Jimenez's petition is stayed and held in abeyance pending state-court review of his unexhausted claims. The respondent need not answer the petition at this time. Jimenez shall, within thirty (30) days after the state court renders its final decision, make an application by letter to this Court in order to restore this action to the Court's calendar. Also within thirty (30) days after the state court renders its final decision, Jimenez may submit a new amended petition that properly raises any timely claims exhausted by the state-

court proceedings. Upon receipt of Jimenez's letter application for the petition's restoration to the Court's calendar, and assuming all of Jimenez's claims were properly exhausted, the Court will then issue a scheduling order directing the respondent to answer the petition.

Jimenez is hereby notified that, if he does not make an application by letter to this Court within thirty (30) days following the completion of state-court review, this petition may be dismissed as not timely under *Rhines* and *Zarvela*. Petitioner is further advised that, if this petition were to be dismissed, any subsequent petition that he files in federal court may be dismissed as time-barred under 28 U.S.C. § 2244(d) and/or treated as a second or successive petition under 28 U.S.C. § 2244(b).

SO ORDERED.

Dated: New York, New York
       December 13, 2011

_____
J. PAUL OETKEN
United States District Judge